Oye, Oye, all persons have a business in the Honorable United States Court of Appeal to adverse or impartial conduct. Please draw near and give your attention for this Court of Nail Professional, Godspeed, United States, and Honorable Court of Appeal. Thank you. Thank you and good morning everyone. Good morning. I'll call the first case, Luis Alberto Hernandez Cruz v. Attorney General. Your appearance, please. Good morning, Your Honor. It's Jaime Hassel for the petitioner. You pronounce Hassel? Hassel. Yes, Judge. Thank you. Let me begin by saying thank you very much. I'm honored to be before the Court. It's my first time here before the Third Circuit and first time in Philadelphia. It's been an absolute pleasure. It also gives me an opportunity to meet government counsel who I can only communicate by usually emails and electronic communications. So thank you. In this case, the immigration judge as well as the Board of Immigration Appeals found that the criminal statute at issue, Section 4304 of the Pennsylvania Criminal Code, was categorically a crime involving moral turpitude. This finding prevented the immigration judge from granting relief from removal in the form of cancellation or removal, that's the type of application of relief, that the petitioner asked for before the immigration judge. She had indicated that she would be willing to grant such an application but for the fact that this crime at issue was in fact a crime involving moral turpitude categorically. Consequently, the sole issue before the Court is whether the agency's finding in this regard to the criminal statute is a permissible construction and interpretation of the law. You do give the agency a considerable amount of deference, don't you? Deference is generally provided to the Court in terms of the finding of the definition of a crime involving moral turpitude. That is correct. This Court in fact held in Kaepnick, which both the government and I both cite that case, in terms of jurisdiction and deference to the Board, the Court of Appeals does not provide deference to the Court regarding the criminal elements in determining whether or not it is a crime involving moral turpitude. Specifically, the Court in Kaepnick addressed that issue. There was a subsequent decision later on which the Board addressed, I'm sorry, this Court addressed in a subsequent decision where it did provide deference to the Court, excuse me, deference to the Board of Immigration Appeals decision regarding a crime involving moral turpitude. However, in that case, the issue, deference was really not an issue because the Court ultimately held that no deference was owed because of the misconstruction of the interpretation of law committed by the Board itself. So regarding deference, it is the Petitioner's... Mr. Hosse, doesn't NAPIC make clear that we have to defer to the BIA's determination not only of moral turpitude, including this case? In fact, Judge, regarding the decision in NAPGIC, NAPGIC actually indicated again that the Court would provide deference to the Board's decision regarding whether a crime may involve moral turpitude. However, the Court specifically found, and I quote, in determining whether the elements of a particular criminal statute deemed to implicate moral turpitude, we do not defer to the BIA. So that makes it very clear that, in fact, the Court later subsequently says, and it holds, that the review of this issue is thus de novo. So it's de novo review by this Court as opposed to providing any kind of deference to the Board's decision. So there's no deference at all just because the subject matter is moral turpitude? Is that what you're saying? The deference, shared deference is owed to the Board's decision regarding whether or not an offense may implicate crime involving moral turpitude. That's the determination of the Board. But when it comes to the determination of what elements of the criminal statute implicate moral turpitude, that's for this Court to decide. Why was CEIJ and the BIA wrong in this case? Both the immigration judge as well as the Board of Immigration Appeals, when they assess the criminal statute, we all focus on the relevant facts of the case. The petitioner was, in fact, the set parent of the childhood issue. When we look at the actual statute itself, however, there are four distinct elements, parents, guardians, persons supervising the children, and then employers or supervisors of supervisors, essentially. That fourth element, that fourth category of individuals was actually not included in the criminal statute until 2006. In 2006, there was a rampant explosion of child abuse allegations against the Archdiocese of the Catholic Church. The state legislator then enacted subsections two and three of the criminal statute as well as that fourth category. I provided the Court with a 28- Did you reserve time for rebuttal? I did, five minutes. Okay. Judge, Your Honors, I did provide the Court with a 28-J letter, including that petition. You did five minutes, and you got 11 minutes left. They should have started with 10. Okay. With the Court's permission, I provided the government counsel- I was wondering, because your time is running, but I wanted to get to the core issue, that this statute is analyzed under the categorical approach or the- By both the Board of Immigration Appeals as well as this Court. Okay. Why don't we focus on that? Why did they earn that approach? Because when you look at the actual statute itself in subsection two, there is, in fact, no mens rea. There is, in fact, no identification of the liability. It is, in fact, holding an individual responsible criminally liable for any person who interferes with the presentation or the making of a suspected child abuse report. Subsection two specifically has no mens rea, no intention, no knowingly aspect of it whatsoever. It is, in essence, a strict liability offense. Both the Board of Immigration Appeals as well as, I believe, all of us agree that when it comes to regulatory offenses, those are, in fact, not crimes involving a moral turpitude. The government, I think, and I both agree with respect to that issue that when it comes to regulatory offenses, the Board has historically agreed that it is not a crime involving a moral turpitude. In that regard- So this is an A2, not an A1? When you look at the criminal statute, you have to look at the entire criminal statute. A1 defines the offense. Subsections two and three enlighten us as to certain aspects of how the different parties in A1 are to be affected. And with respect to subsection two, it specifically addresses how other persons, in fact, are to be held liable. I'm sorry. I thought I heard a question. When the subsection- I don't understand how your interrelationship between A1 and A2 now. I thought for our focus now, our focus had to be on A1 and specifically the knowingly endangers because that focuses on the knowledge requirement. When we look at the entire statute, when you look at A1, you have to look at all the different parties, the parents, the guardians, supervisors, and the individuals who supervise or employs a supervisor. When you look in that respect, we don't look to the criminal liability of the respondent in the facts of the case. We look to the general requirements of the statute. The general requirements of the statute with respect to the fourth category of individuals, the individuals who employ or supervise others who, in fact, are supervising children. With that regard, subsection two enlightens us that there is, in fact, no mens rea element. And, in fact, all that individual needs to do in order to be criminally liable is present or interfere with the- parents and persons in custody of children who have endangered their children because of reckless conduct. Knowing they had a duty to take care of children, they failed in that duty. There is one particular where under religious beliefs, the parents of the child refused to provide that child medical care, the child died, convicted under the statute. And the BIA would find that that's morally reprehensible, vile, and depraved. And I would generally agree with that. But we're also dealing in that type of situation with the parent, not with the supervisor or with their employer of a supervisor. Are there any situations, any factual scenarios that would come under the statute that would not be- that would not involve an offense that endangers the welfare of a child that would not be morally reprehensible? I believe the prosecution in the 28-J letter, the citation that I provided to the court, in reference to my senior, Williams J. Lynn, the Court of Appeals in Pennsylvania recently, in December 2013, reversed the conviction. Now, granted, that was dealing with the old version of the law, which did not include the employer aspect element that was created in 2006. You know what I'm looking for, Mr. Hatcher? What is the least culpable conduct that could be committed? An individual- Under the statute, that would not constitute morally reprehensible, vile, and depraved conduct. An individual who, in his official capacity, that interferes or prevents the filing of a child's- of a suspected child abuse report. The reason why that doesn't infer or include a crime involving an alterpity is because there's no intent to do that. Under the statute, an individual can be convicted or held criminally liable by simply preventing it. I don't understand why we're focusing on A2 here, because it takes out of the realm of our focus all of the least culpable conduct that involves individuals. When we look at A1, we're looking at parents, people who have guardianships over children, and we're looking not at the facts, but at the least culpable conduct that could fall within the statute. When you include A2 in that calculus, that changes the entire focus, right? Because that takes out the mens rea knowledge. I understand that, but why is that required? Why is it required that we look at A2 and take away the knowledge in mens rea? Because A2 generally focuses on the other person aspect of A1. What compels us to do that? The statute itself. I could be looking at the wrong statute. I've done that many times. But this A2 refers to people in official capacities. A person commits an offense if the person in an official capacity. But it's making reference to a person. A person as in an official capacity. Would that be like a child social worker who has custody of children? It doesn't even have to involve a social worker who has custody of children. But A1, as Judge Greenaway is pointing out, refers to a parent. Well, A1 includes. A2 refers to people in official capacity. A1 includes all of the four different categories. A parent, a guardian, other person supervising the welfare of the child. Under which provision did your client plead guilty? My client pled guilty under the parent, A1. But we look to the complete language of the statute. Can't that be our focus? Our focus is to the complete language of the statute. I come back to this, and please be as specific as you can. What compels us to look at A2 when the focus of A2 is entirely different and apart from A1? A2, we're talking about an official capacity. We're talking about prevents or interferes with the making of a report of suspected child abuse, which is entirely different in kind and nature to A1. A2 is implemented at the same time that the fourth category individuals are also included in the statute. They come together. The other person's category was instituted in 2006. So is A2 and A3. They don't exist prior to that time frame. They all – So the categorical approach requires us to do this? The categorical approach requires us to take a look at the complete elements of the offense. Can I trouble you nonetheless, and despite what you are now saying, to focus on A1 for a moment and ask you, since this is your case, what's the least culpable conduct that one can commit that would make one – that would have one convicted under A1? If we focus on the support aspect? Just A1. Just A1 would be a support – Least culpable conduct. Would be a support aspect of it, financial support. An individual that doesn't provide financial support to a child would be held culpable, a criminal liable under A1. A parent who forgets to buckle up – That would fail him to file – make support payments or file support? Yes, Judge. According to this, it includes a duty of care, protection, or support. So support would be an aspect. How support? What do you mean support? Not paying support? I would imagine support would be – And you think not paying support would knowingly endanger the welfare of a child? As endangering a child has been defined under the Pennsylvania law? Yes, Judge. Under the decision of the Williams J. Lynn decision, the appellate court defines what endangering a child would be. I gather that no such case has been brought under this provision. Under A1? 4304A1. Right. No, Judge, you asked me to provide you with a factual scenario. Again, another factual scenario would be the individual who – So you think the state courts would actually file a claim against a father who doesn't – or mother who doesn't pay support under this provision because that would endanger the welfare of the child? The way that the definition of endangering a child is? Absolutely. It's within the purview of the district attorney's office. I'm not saying that they would, but absolutely, they could if need be. Judge, I'd like to reserve any – Three minutes? Yes. Okay. Please, Judge. Very good. Thank you. Was there an additional question, Your Honor? Well, the question I had was would that be – which goes back to an earlier question of Judge Fuentes – would that be depraved? No, Your Honor, and that's the whole point is that a crime involving moral turpitude by definition is one that is evil, malintent, or lacks depravity. So an individual that finds themselves subject to prosecution under that statute theoretically is criminally liable, however, has not committed a crime involving turpitude as that term has been defined by the board. Thank you, Mr. House. Ms. Clark? Good morning, Your Honors, and may it please the Court. My name is Catherine Clark, appearing on behalf of the Attorney General. The agency reasonably held that endangering the welfare of a child categorically involves moral turpitude under the Immigration and Nationality Act because the child endangerment statute requires a mens rea of knowledge as to both the endangerment itself and the aggravating factor of the duty of care. So whoever violates the statute, be it a parent, a guardian, a supervisor, or the supervisor's supervisor, must have the duty, know he or she has the duty, and also knowingly violate that duty. Do you tackle Mr. Hasso's hypothetical about a father who doesn't pay support and could be convicted under the statute because that failure not only endangers the welfare of the child? He mentioned that the father could be convicted under that scenario if he forgot to pay support, and I actually don't believe that that is correct. The mens rea... How about not forgetting, simply not having the money to make the payment? There certainly has not been. The Court asked whether there had ever been a conviction under those factual circumstances. But that's not the test, though. I did ask the question. That's not really the test. What's the least culpable conduct that one can engage in that would bring one within the words of the statute, and one could be convicted? I think because the case law doesn't provide a certain answer to that question, the best way to answer it, at least approximately, is to sort of triangulate based on convictions that did and did not. No, but we can come up with hypotheticals. We have said in other opinions that hypotheticals are the way we can get to the meaning of the statute. And that's what Mr. Hasso has given us, a hypothetical. The convictions that have not permitted findings of... Convictions or factual scenarios that have not permitted conviction have tended to be the sorts of convictions where parents simply... I'm going to go with... Excuse me. A Superior Court case, Campbell, where a 13-year-old girl became pregnant because her parents... She was knocked out and her parents were unable to support her. The state court reasoned... Or were unable to supervise her adequately to prevent her from doing that. The state court reasoned that her parents essentially couldn't be supervising her all the time. They couldn't be everywhere. So that was based... The reasoning in that case for why the conviction was overturned was based on their inability, similar perhaps to the father's inability to pay the support. But you see that the parent was charged. Is that correct? In that case, the parent was charged, but the sort of reasoning would apply now... And what happened? The child left the home? The child left the home. She was 13 years old. She became pregnant by an adult. Would you consider the parent to have engaged in vile, depraved, and morally reprehensible conduct? Because the parent was not convicted under 4304, no. If that's so, how do you sustain this statute? There was no conviction under 4304 in that case. So because there can be... What the state court was clarifying in that case is that from at least that point forward, there can now be no convictions for parents who cannot actually prevent what occurred. So that's my way of answering the court's question, could a father be convicted for being unable to pay the support? The question was, what's the least culpable conduct? Yes, exactly. And if that's the question, I mean, one of the examples that seems to strike a chord is the one where a parent is driving five miles over the speed limit, which would technically fall within the parameters of the statute, right? I would not concede that, no. Because it would have to be that... You wouldn't concede that that would fall within... No. Okay. Just going back for a moment, my question, and I just read it as well, is if the least culpable conduct punishable under this statute, such as the hypothetical that Mr. Hasso presented, if that conduct is not morally reprehensible, then this statute cannot be used to exclude aliens. But we would not concede... And that is not a crime involving moral turpitude. But the premise of that question would be that the hypothetical that he presented actually would permit conviction under the statute, and we would not concede that. No, but your own example would not permit conviction under the statute, but the person was charged. But the conviction was overturned, and future convictions under that theory cannot be pursued for that reason. A spin on Judge Greenaway's example. So I'm driving a car, and I have a child in the back seat. I have a baby, and I'm driving along. I'm not going five miles over this vehicle. I'm going 15 miles over this vehicle. That's not very good conduct, very good behavior with a child in the back. Not only that, I go right through a stop sign. I know the stop sign is there. Now, I think I can be charged with the statute. I have custody of a child, and I know that I have to protect the child. Am I not endangering the child sitting in the back seat of the car? If you know that you are endangering the child, if you proceed through the stop sign at a rate of speed that I believe 15 miles an hour would actually be per se reckless driving under Pennsylvania law. And I could be charged under the statute? If you know that you are 15 miles over the speed limit. Again, I haven't seen a case where that actually occurred, but if you know that you are endangering the child by doing it, then I can't see an actual prohibition in the statutory language, but knowingly endangering a child would be required. How about just going through the stop sign? You said the conduct was reckless. How about if I just go through the stop sign with the child in the back? If you don't know that you are endangering the child by doing it, then I do not believe that you could be charged under 4304A1, because it requires knowing endangerment. So if you're not going through the stop sign with the knowledge that doing so endangers the child. How about with the knowledge that I could get hit on the side by another car? I'm not looking either way. I just go right through the stop sign and an accident occurs. I don't believe that. Unless you could infer knowledge from those circumstances, knowledge not of the fact that you could be hit by the car, but knowledge of the fact that you could be endangering the child, then you cannot be charged under that statute. And for another point to clarify is that this is a 4304A1 question that we're working with here. 4304A2 has not been briefed, has not been analyzed by the court. So to the extent that 4304A2 was discussed previously, it's simply not relevant to the analysis here. Is there any case law that supports focusing on A2, not specifically 4304A2, but that Mr. Hasso suggests that we should be looking at the entire statute? Does the case law require that you look at the entire statute or the statute involved in the particular violation at hand? No, there is no case law requiring the court to look at a subsection that was neither prosecuted nor convicted. This is not a case where we're arguing that he may have been convicted under A2. Is the focus on A1, then? The focus is and should be on A1. And Petitioner, in his opening statement— But is A2—was I correct when I—I just read the words, but was it correct that it only deals with official people functioning in official capacities? To my understanding, yes, I've not done detailed case law research on A2, but yes, under the plain language, that would appear to be— Okay, so we focus on A1. Correct. That would be what our argument would certainly be and what the record would support. How about that hypothetical? Again, we do deal with hypotheticals to try to get at the least culpable conduct that would bring somebody within the statute that may or may not be morally reprehensible. Supposing parents that have deep-seated religious beliefs, and part of those beliefs is not taking their children directly to a hospital or to a doctor when the child is ill. Let's say the child has a fever, and the two people, because of their religious beliefs, say, you know, we're going to try to treat this child right here. Now, the state authorities find out about that, regardless of what happens to the child. The state authorities find out about that. Can they be brought to court under the statute? If they knowingly endanger the child by doing so, then yes. If they know that the fever is of a degree that would endanger the child's safety, then yes, that would be a potential— So you would consider, the state would consider, or the government, in this case, would consider their conduct morally reprehensible, depraved, and vile, so that we can say it was a crime involving moral turpitude. Yes, because the standard for what moral depravity is, or what is violent and depraved, is, in this case, and under the statute, based on the common sense of the community. And the court, the state court, has found, under certain circumstances, and I don't believe that they were quite as narrow as a fever, I believe it included more symptoms than that, but I don't recall what those symptoms were, that religious deprivation of care, and in that case, I do believe the child died, was shocked at the common sense of the community. The language that the state courts use to describe this 4304A1 is remarkably similar to the language that this court, the board, every other appellate court, the Supreme Court has used to address moral turpitude for immigration purposes. And that is sort of the basis of where the vile and depraved nature of this offense comes from. So you're referring to Mabob? Among other cases, yes. What is it about Mabob that we should use and apply? In Mabob, the aggravating factor was the young age of the victim. There was no mens rea element even in that, as to the aggravating factor in that case. Here, this is actually a stronger case for moral turpitude than Mabob because there is a mens rea element, a knowledge mens rea element, as to the aggravating factor of the duty of care. In that case, of course, the aggravating factor was the age of the victim, and there was a dispute as to whether the defendant, later the petitioner, knew what the age of the victim was. Here there is no dispute that Hernandez had a duty of care towards his stepson, knew of his duty of care, and knowingly endangered his stepson nonetheless. I've read that some parents don't believe in vaccinations for their children and refuse to have their children vaccinated. And if that were the case here, whether for their own beliefs or whether because of religious beliefs, they don't have their children vaccinated. Now, nothing happens to the children. They just refuse to take them, whether to a doctor or a clinic, to have the children vaccinated. They could be charged under this provision for endangering the welfare of a child by violating a duty of care. Is that correct? I would not concede that because I would not concede that they know in that circumstance that they are endangering their child's welfare. And that would be what you would have to prove under the statute, what the state prosecutor would have to prove under that statute. Whether the common sense of the community has sort of reached the point where or retreated perhaps from the point where a choice not to vaccinate would offend its common sense, that's not entirely clear. However, it's, again, it's not been charged and it's not an emergent care. What if it were a state requirement? It would – this is delving into – The state of Pennsylvania requires that children of a certain age have certain vaccinations. The parent says, I'm not going to do that. I believe that that is to attend school, that the Pennsylvania state requirement is to attend school, as opposed to homeschool or certain private schools. But you don't believe that parent could be brought to a court under the statute, child endangerment? It's never been done. And I cannot speak for the board on the matter because they simply – because it's never been done at the state level to the point where – If it could be done, you have to accept this. I do not concede that it could be done. No, you don't concede it. That's all right. It's a hypothetical. If it could be done, if it could be done, would it involve a crime involving moral turpitude? Yes, because any conviction under this – if it could be done, any conviction under this – if it could be done, that would mean that the parents were knowingly endangering their child by doing it. Very good. And that is all that's required for turpitude. How about if a parent negligently left a plastic near a crib and a child suffocated? Could that person be prosecuted under this statute? No, because – Negligently. No, because no negligent action can be prosecuted. How about Commonwealth v. Fuel, F-E-W-E-L-L? Are you familiar with that case? I am not. Okay. It's a Pennsylvania Superior Court case which held that that conduct was criminalized under the statute. It is a crime. The – Negligent. That it was negligent conduct. Having not found that particular case – We cited it in one of our cases, U.S. v. Gallo also. I don't know if you – did any of you cite Gallo? I don't think so. But anyway, thank you. And I see my time is up, but every conviction under this statute requires knowledge as to both – not simply negligence, as to both the endangerment and the duty of care. Thank you, Ms. Clark. Mr. Asad? Thank you. I think actually you went quite over your time last time. Did I? If I did, I'll submit. Give him, like, three. Yeah. Three? Yeah. Because he had more than – don't you think? Yeah. You did go quite over. I'm going to give you another minute to respond. Just briefly, Judge. I want to just note that the Board's definition of crime involving moral turpitude always has included a vicious motive or corrupt mind. So I think when Your Honor posed that hypothetical regarding the religious beliefs and failing to provide the child with medical attention based on that alone, I failed to see how that action would have that vicious motive and that corrupt mind. So I think that Your Honor has noted a very valid point regarding this criminal statute issue, that it cannot be held categorically a crime involving moral turpitude. You would have to proceed to the further analysis under the modified critical approach to determine the facts of the record and determine whether or not those facts make it a crime involving moral turpitude. If we disagree with you and disregard your arguments with regard to A2, what's your best argument solely on A1, the one you just made? I think it goes back to Your Honor's hypothetical that, in fact, the government has conceded that the individual could be criminally liable for holding a religious belief, and that cannot be held to have a vicious motive or a corrupt mind or depravity under the law. I'm not sure she'd agree with you that she conceded. Oh, maybe I misheard. But I thought I did. All right, thank you. Thank you, Your Honor. Thank you, Mr. Hassif. Thank you both for your arguments. We'll take your case under advisement and call the next case, U.S. v. Omar Bennett. Thank you.